

**FILED**

JUN 10 2008

CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
(NORTHERN DIVISION)

CIV08-1012

| | |
|---|---|
| SIERRA CLUB, )<br><br>Plaintiff, )<br><br>v. )<br><br>OTTER TAIL CORPORATION, d.b.a. )<br>Otter Tail Power Company, )<br><br>MDU RESOURCES GROUP, INC., and )<br><br>NORTHWESTERN CORPORATION, d.b.a. )<br>NorthWestern Energy, )<br><br>Defendants. ) | COMPLAINT FOR<br>DECLARATORY AND<br>INJUNCTIVE RELIEF AND<br>DEMAND FOR JURY<br>TRIAL |

Plaintiff, Sierra Club, through its undersigned attorneys, hereby files its Complaint and

states as follows:

## NATURE OF THE ACTION

1.      This is a civil action brought by Sierra Club against Defendants Otter Tail

Corporation, d.b.a. Otter Tail Power Company ("Otter Tail"), MDU Resources Group, Inc.

("MDU"), and NorthWestern Corporation d.b.a. Northwestern Energy ("NorthWestern")

(collectively referred to as "Defendants"), pursuant to § 304 of the Clean Air Act ("the Act" or

"CAA"), 42 U.S.C. § 7604, for declaratory and injunctive relief and the assessment of civil

penalties, along with costs and fees, for violations of the Prevention of Significant Deterioration

("PSD") provisions of the Act, 42 U.S.C. §§ 7470-7492, and the South Dakota State

Implementation Plan ("South Dakota SIP"), and the New Source Performance Standards

("NSPS") provisions of the Act, 42 U.S.C. § 7411; which have occurred and are continuing to occur at the Big Stone Generating Station ("Big Stone").

2.     Defendants have, on several occasions detailed herein, modified and thereafter operated Big Stone without first obtaining appropriate permits authorizing the construction and continued operation of the modified facility, without meeting emission limits that reflect "best available control technology" ("BACT"), without meeting various applicable NSPS requirements and limitations, and without installing appropriate technology to control emissions of nitrogen oxides ("NOx"), sulfur dioxide ("SO2"), particulate matter ("PM" and "PM10"), as was required by the Act and implementing regulations as well as the South Dakota SIP.

3.     As a result of the Defendants' operation of Big Stone following these unlawful modifications without appropriate controls, unlawful and excessive amounts of various air pollutants have been, and continue to be, released into the atmosphere, contributing to air pollution and visibility impairment and increasing the risk of adverse health effects and environmental damage.

4.     This action seeks an order from this Court designed to bring Defendants into compliance with the Clean Air Act by enjoining them to go through the proper procedures necessary to obtain a lawful and appropriate PSD permit for Big Stone that incorporates and satisfies the requirements of the Act and the South Dakota SIP. Plaintiffs also seek an injunction designed to bring Big Stone into compliance with the applicable NSPS requirements and limitations. Plaintiffs seek civil penalties for the Defendants' violations, as well as fees and costs.

5.      An order from this Court designed to ensure that Defendants comply with the Clean Air Act and South Dakota SIP by requiring them to obtain a lawful and appropriate PSD permit (including all required air quality analysis demonstrations) and to take all necessary measures to comply with the applicable NSPS and BACT emissions limits through the installation and operation of necessary pollution controls will result in decreases of thousands of tons of air pollution. This will be beneficial for air quality and visibility and will protect rivers, lakes and streams as well. Such an order will also protect the Plaintiffs' members and others living, visiting and/or recreating near Big Stone.

## PARTIES

6.      Plaintiff Sierra Club is a non-profit corporation, organized and existing under the non-profit corporation laws of the State of California. The Sierra Club, a national conservation organization with over 600,000 members, is dedicated to protecting natural resources, including clean air and water.  Sierra Club's national headquarters office is located at 85 Second Street, San Francisco, California, 94105. Sierra Club's South Dakota Chapter Field Office is located at 508 6th Street, Rapid City, South Dakota. Sierra Club's North Star Chapter (Minnesota) is located at 2327 East Franklin Avenue, Suite 1, Minneapolis, Minnesota 55406-1024.

7.      Sierra Club exists for the purposes of preserving and protecting the environment and has been actively engaged in protecting air and water quality and other environmental values throughout the region in which Big Stone is located for years.

8.      Since 1981, Sierra Club's stated purposes in its Articles of Incorporation (www.sierraclub.org/policy/articles_current.asp) have been:

--3--

to explore, enjoy, and protect the wild places of the earth; to practice and promote the responsible use of the earth's ecosystems and resources; to educate and enlist humanity to protect and restore the quality of the natural and human environment; and to use all lawful means to carry out these objectives.

9.      Sierra Club members have lived, worked, and/or recreated in the area impacted by the unlawful, unpermitted air pollution emitted from the Big Stone plant since 1995 and their aesthetic, recreational, environmental, economic and/or health-related interests have been injured by Big Stone's illegal and excessive emissions of pollutants.  These Sierra Club members will immediately benefit from the installation of required pollution controls at Big Stone.  Sierra Club brings this action on behalf of its members negatively affected by Defendants' unlawful operations and emissions.

10.      Defendant Otter Tail Corporation ("Otter Tail") is a Minnesota corporation with its principal place of business in Fergus Falls, Minnesota.  Otter Tail does business under the name "Otter Tail Power Company."  Otter Tail is and was, at all times relevant to this complaint, an owner and the operator of Big Stone and responsible for the operation of Big Stone, and for bringing Big Stone into compliance and maintaining its compliance with the Clean Air Act.

11.      Defendant MDU Resources Group, Inc. ("MDU") is a Delaware corporation with its principal place of business in Bismarck, North Dakota.  One of its divisions does business under the name Montana-Dakota Utilities Co.  MDU is, and was, at all times relevant to this complaint, an owner of Big Stone, and responsible for the operations of Big Stone, and for bringing Big Stone into compliance and maintaining its compliance with the Clean Air Act.

12.      Defendant NorthWestern Corporation ("NorthWestern") is a Delaware corporation with its principal place of business in Sioux Falls, South Dakota.  NorthWestern does

−4−

business under the name "Northwestern Energy." NorthWestern is and was, at all times relevant to this complaint, an owner of Big Stone, and responsible for the operations of Big Stone, and for bringing Big Stone into compliance and maintaining its compliance with the Clean Air Act.

13.     Plaintiff Sierra Club and each of the Defendants, is a "person" within the meaning of §§ 302(e), 304(a), 304(a)(1), and 304(a)(3) of the Act, 42 U.S.C. §§ 7602(e), 7604(a), (a)(1), (a)(3).

## JURISDICTION AND VENUE

14.     This Court has subject-matter jurisdiction over the claims set forth in this Complaint pursuant to 42 U.S.C. § 7604(a), 28 U.S.C. §§ 1331, 1355, 2201, and 2202. The relief requested by the Plaintiff is authorized by statute in 28 U.S.C. §§ 2201 and 2202, and in 42 U.S.C. §§ 7413, 7604.

15.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claims in this Complaint occurred in the District of South Dakota and, pursuant to 42 U.S.C. § 7604(c)(1), because this action is brought for existing violations at Big Stone, which is located entirely within the Northern Division of the District of South Dakota.

## NOTICE

16.     In compliance with the requirements of § 304(b)(2) of the Act, 42 U.S.C. § 7604(b)(2), and 40 C.F.R. Part 54, to the extent that it was necessary, Sierra Club notified the Defendants, the U.S. Environmental Protection Agency ("EPA") and the State of South Dakota of its intention to file this action on November 20, 2006.

–5–

17.     Plaintiff Sierra Club's notice of intent to sue was mailed via certified mail, return receipt requested, post-marked November 20, 2006.

18.     More than 60 days have passed since Sierra Club provided its notice of intent to sue to the Defendants, EPA and the State of South Dakota in full compliance with 42 U.S.C. § 7604(b)(2) and 40 C.F.R. Part 54.

**BACKGROUND**

19.     The Clean Air Act is designed to protect and enhance the quality of the Nation's air so as to promote the public health and welfare and the productive capacity of its population. 42 U.S.C. §7401(b)(1).

20.     Section 302(g) of the Act, 42 U.S.C. § 7602(g), defines the term "air pollutant" when used in the Act as:

> Any air pollution agent of combination of such agents, including any physical, chemical, biological, radioactive (including source material, special nuclear material, and byproduct material) substance or matter which is emitted into or otherwise enters the ambient air. Such term includes any precursors to the formation of any air pollutant, to the extent the Administrator has identified such precursor or precursors for the particular purpose for which the term "air pollutant" is used.

The United States Supreme Court ruled in *Massachusetts v. EPA,* -- U.S. --, 127 S.Ct. 1438, 1460 (2007), that greenhouse gases, including carbon dioxide ("CO2") and methane, are air pollutants within the meaning of this definition.

21.     Section 108(a) of the Act, 42 U.S.C. § 7408(a), requires the EPA to identify and prepare air quality criteria for each air pollutant which may reasonably be anticipated to endanger public health and welfare, and which results from numerous or diverse mobile or stationary

sources. Section 109 of the Act, 42 U.S.C. § 7409, requires the Administrator to promulgate, for

each such "criteria pollutant," National Ambient Air Quality Standards ("NAAQS"), which are

ambient air pollution concentration limits, the attainment and maintenance of which, with an

ample margin of safety, is requisite to protect the public health and welfare. Sulfur dioxide

("$SO_2$"), nitrogen dioxide ("$NO_2$"), ozone, and particulate matter ("PM") are among the criteria

pollutants for which NAAQS have been established; nitrogen oxides ("NOx") are chemical

precursors to the criteria pollutant ozone.

22.     Section 107(d) of the Act, 42 U.S.C. §7407(d), requires each state to designate

those areas within its boundaries where the air quality meets or exceeds the NAAQS for each

criteria pollutant. An area that meets or has lower pollutant concentrations than the NAAQS for

a particular pollutant is termed an "attainment area," an area that does not meet the NAAQS is

termed a "nonattainment area," and where there is no available information to classify an area as

meeting or not meeting the NAAQS, that area is designated "unclassifiable."

23.     Congress enacted a Prevention of Significant Deterioration ("PSD") program in

Part C of Title I of the Act, 42 U.S.C. §§ 7470-7492, which applies in areas designated as

attainment or unclassifiable. The PSD program's purposes include ensuring both that economic

growth will occur in a manner consistent with the preservation of existing clean air resources,

and that any decision to permit increased air pollution in any area to which the PSD program

applies is made only after careful evaluation of all the consequences of such a decision. 42

U.S.C. § 7470.

24.     EPA promulgated final rules implementing the PSD program requirements of the

Act at 40 C.F.R. § 52.21 ("federal PSD rules"). These rules were applicable during time that is

–7–

relevant to the modifications addressed in this Complaint, which extended from approximately 1995 to 2007.   During this time, the State of South Dakota was delegated EPA's authority to administer these federal rules.

25.      In 2007, EPA approved revisions to the South Dakota SIP which thereafter constituted a federally enforceable South Dakota SIP-approved PSD program.  *See* 72 Fed. Reg. 4671 (Feb. 1, 2007); 72 Fed Reg. 72617 (Dec. 21, 2007).  These state SIP-approved rules, which are codified at Administrative Rules of South Dakota ("ARSD") 74:36:09 *et seq.*, adopt by reference the 2005 version of 40 C.F.R. § 52.21 with limited exceptions.  Under these recently approved rules, the South Dakota Department of Environment and Natural Resources ("SDDENR") has authority to implement this SIP-approved PSD program, including by issuing preconstruction permits for new and modified stationary sources in South Dakota.  *See* 72 Fed. Reg. 4671 (Feb. 1, 2007): 72 Fed. Reg. 72617 (Dec. 21, 2007).

26.      At all relevant times, 42 U.S.C. § 7475(a) and 40 C.F.R. § 52.21(i) & (j) required that, before beginning actual construction of a "major modification" to any existing major stationary source in an attainment area, a permit ("PSD permit") must be obtained, stating that the modification will meet each applicable emissions limitation under the State SIP, and each applicable NSPS emissions standard, and will apply "best available control technology" for each air pollutant subject to regulation under the Act that the modified facility would have the potential to emit in significant amounts.  Before a PSD permit can be issued the plant's owner or operator also must demonstrate that the facility as modified will not adversely impact an air quality standard, a PSD increment or an air quality related value.

27.      Pursuant to 42 U.S.C. § 7475(a)(4), "best available control technology"

("BACT") means:

> an emission limitation based on the maximum degree of reduction of each pollutant subject to regulation under this Act emitted from or which results from any major emitting facility, which the permitting authority, on a case-by-case basis, taking into account energy, environmental, and economic impacts and other costs, determines is achievable for such facility through application of production processes and available methods, systems, and techniques, including fuel cleaning, clean fuels, or treatment or innovative fuel combustion techniques for control of each such pollutant.

The definition of BACT in the federal rules at all relevant times was substantially the same as the statutory definition, and was found at 40 C.F.R. § 52.21(b)(12)(1995).

     28.     At all relevant times, the federal PSD rules stated that any owner or operator of a source or modification who commences construction without applying for and receiving approval to construct, was subject to enforcement action, including a citizen suit. 40 C.F.R. § 52.21(r)(1)(1995); 42 U.S.C. § 7604.

     29.     At all relevant times, 40 C.F.R. § 52.21(n) required the owner or operator of a proposed modification to submit all information necessary to perform any analysis or make any determination required under the PSD rules.

     30.     At all relevant times, "major stationary source" was defined to include fossil fuel-fired steam electric plants of more than 250 Million British Thermal Units ("MBtu") per hour heat input which emit or have the potential to emit one hundred tons per year or more of any pollutant subject to regulation under the Act. 40 C.F.R. § 52.21(b)(1)(i)(a)(1995).

     31.     At all relevant times, Big Stone was and remains a major stationary source.

     32.     At all relevant times, "major modification" was defined to mean any physical change in or change in the method of operation of a major stationary source that would result in a

–9–

significant net emissions increase of any pollutant subject to regulation under the Act.  40 C.F.R. § 52.21(b)(2)(i) (1995).

33.     At all relevant times, pursuant to the federal PSD rules, before the owner or operator of a large, existing source of air pollution in an attainment area such as Big Stone makes a "major modification" or a physical change to the facility which will increase emissions of NOx by more than 40 tons per year, SO2 by more than 40 tons per year, PM by more than 25 tons per year or PM10 by more than 15 tons per year, that owner or operator must apply for and receive a PSD permit.  40 C.F.R. § 52.21(b)(23)(i) (1995).

34.     For any new or modified source that has triggered the application of the PSD program at all relevant times, compliance with BACT-derived emission limitations is an on-going and independent requirement in order to continue to operate thereafter under the federal PSD rules, 40 C.F.R. 52.21(j)(1995), and later the South Dakota SIP which became effective in 2007.  ARSD 74:36:09:02 (adopting by reference 40 C.F.R. § 52.21(j) (2005)).

35.     Pursuant to § 111 of the Act, 42 U.S.C. § 7411, EPA is required to publish a list of categories of major air pollution sources that, in EPA's judgment, cause or contribute significantly to air pollution which may reasonably be anticipated to endanger the public health or welfare and to promulgate standards of performance for new stationary sources within those categories.  These standards are known as the New Source Performance Standards ("NSPS").

36.     Pursuant to § 111(e) of the Act, 42 U.S.C. § 7411(e), after the effective date of an NSPS, it is unlawful for any owner or operator of any new source to operate that source in violation of any applicable standard of performance.

−10−

37.     Pursuant to 40 C.F.R. § 60.14(a), any physical change or operational change to an existing facility which results in an increase in the emission rate to the atmosphere of any pollutant to which a standard applies must be considered a modification within the meaning of § 111 of the Act.  Upon modification, an existing facility becomes an affected facility for each pollutant to which a standard applies for which there is an increase in the emission rate to the atmosphere.

38.     Pursuant to § 111(b)(1)(A) of the Act, 42 U.S.C. § 111(b)(1)(A), EPA has identified electric utility steam generating units for which construction or modification commenced after September 18, 1978 as one category of stationary sources that cause, or contribute significantly to air pollution that may reasonably be anticipated to endanger public health and welfare.  The NSPS regulations applicable to such units are set forth in NSPS Subpart Da, 40 C.F.R. §§ 60.40a - 60.49a, which was originally proposed on September 18, 1978.

39.     The owner or operator of a new source that is subject to NSPS Subpart Da is required to comply with emission standards for SO2, NOx and PM and opacity, 40 C.F.R. §§ 60.42a - 60.44a, including a requirement to significantly reduce SO2 emissions on a percentage basis, 40 C.F.R. § 60.43a; testing requirements, 40 C.F.R. §§ 60.8, 60.13 and 60.48a; emission monitoring requirements, 40 C.F.R. §§ 60.13 and 60.47a; notification requirements, 40 C.F.R. §§ 60.7a and 60.8(d); and record keeping and reporting requirements.  40 C.F.R. §§ 60.7b and 60.7c.

40.     Carbon dioxide is an air pollutant regulated under the Act at 40 C.F.R. Part 75, pursuant to 42 U.S.C. § 7651k (note) (describing § 821 of Pub. L. 101-549) and the

implementing regulations promulgated at 40 C.F.R. Part 75.  Therefore, CO2 is a regulated NSR pollutant as defined in 40 C.F.R. § 52.21(b)(50)(iv).

41.     Methane is an air pollutant regulated under the Act at 40 C.F.R. § 60.753, under the NSPS provisions, 42 U.S.C. § 7411, among other places.  Therefore, methane is a regulated NSR air pollutant as defined in 40 C.F.R. § 52.21b(50)(iv).

42.     Section 304(a)(3) of the Act, 42 U.S.C. § 7604(a)(3), expressly authorizes citizen suits such as this, providing that "any person may commence a civil action on his own behalf ... against any person who proposes to construct or constructs any new or modified major emitting facility without a permit required under Part C of subchapter I of [the Clean Air Act] (relating to significant deterioration of air quality) . . . ."

43.     Pursuant to §§ 113 and 304 of the Act, 42 U.S.C. §§ 7413, 7604, the Court may award civil penalties up to $25,000 per day of violation for violations occurring before January 30, 1997, up to $27,500 per day for each such violation occurring between January 30, 1997 and March 15, 2004, and up to $32,500 for each such violation occurring after March 15, 2004, as well as injunctive relief, and Sierra Club's cost of bringing this action, including reasonable attorney's fees.

## FACTS

44.     Big Stone is an existing coal-fired electric generating facility, including one 450 megawatt ("MW") unit and supporting ancillary infrastructure located at 48450 144th Street, Big Stone City, South Dakota, 57216, approximately 7.5 miles northeast of Milbank, and 2.5 miles northwest of Big Stone City, in Grant County.

45.     At all relevant times, Grant County South Dakota was classified attainment for all criteria pollutants relevant to this Complaint, including SO2, NOx, ozone, and PM.

### Conversion to Subbituminous Coal

46.     Big Stone was originally designed to burn lignite fuel.

47.     The first operating permit for Big Stone was issued on January 14, 1975.

48.     Big Stone began commercial operation on May 1, 1975.

49.     Big Stone burned lignite coal as its primary fuel from 1975 until approximately August 1995.

50.     In approximately August of 1995, Big Stone began burning subbituminous coal as its primary fuel.

51.     This conversion to subbituminous coal resulted in a significant net emissions increase in emissions for NOx and PM.

52.     The Defendants did not obtain a PSD permit before initiating the burning of subbituminous coal and did not install BACT and comply with BACT-based emission limitations.

### Changes to Provide Steam to Ethanol Plant

53.     In approximately 2001, changes were made at the Big Stone plant to allow Big Stone to supply steam to a co-located ethanol plant, rather than only supplying steam to produce electricity for sale.

54.     These changes included the addition of a steam line between Big Stone and the ethanol plant, and the addition of a condensate return line, among other physical changes and changes in the method of operation of Big Stone.

55.     Plaintiff Sierra Club alleges that, after a reasonable opportunity for further investigation or discovery, it is likely that evidentiary support will be obtained to establish that some or all of the alleged physical changes made to accommodate the supply of steam to the ethanol plant, including but not limited to the addition of a new steam line and condensate return line, were made within the Big Stone boiler island.

56.     Otter Tail projected that changes to the plant to allow the supply of steam to the ethanol plant would result in burning 2- 2.5% more coal at Big Stone than before the changes were made.

57.     On approximately August 8, 2001, SDDENR issued a minor permit amendment to the Big Stone Title V permit.  The permit revision states that the steam generator at Big Stone would be used not only to generate electricity but to provide steam to an ethanol plant.  SDDENR also increased the permitted maximum heat input capacity of the boiler from 4,509 MBtu/hr to 5,609 MBtu/hr, and replaced the 1,226 pound per hour PM limit with a new limit expressed as 0.26 pounds per million British Thermal Units heat input ("lb/MBtu").

58.     The physical changes and/or changes in the method of operation of Big Stone implemented in order to supply steam to the ethanol plant resulted in a significant net emissions increase in emissions for SO2 and PM.

59.     The physical changes alleged to have been made within the Big Stone boiler island resulted in an increase in the hourly emission rates of SO2 and PM into the atmosphere.

60.     The Defendants did not obtain a PSD permit before making these changes to the Big Stone boiler and did not install and comply with BACT-based emission limitations.

–14–

61.      After these alleged changes within the Big Stone boiler island were completed, Big Stone continued to operate without complying with the SO2 emissions reduction requirements set forth in NSPS Subpart Da at 40 C.F.R. § 60.43a.

## GENERAL ALLEGATIONS

62.      At all relevant times, Defendants, individually or together, owned or operated the Big Stone Generating Station.

63.      At all relevant times, the Big Stone Generating Station was a "major emitting facility" and a "major stationary source" of NOx, SO2 and PM within the meaning of the PSD program of the Act, and the federal PSD rules, and the South Dakota SIP as incorporated in the ARSD.

## FIRST CLAIM FOR RELIEF
### (Change in the Method of Operation That Caused Significant Emissions Increase Without First Obtaining a PSD Permit)

64.      Paragraphs 1 through 63 are incorporated herein as if set forth in full.

65.      Big Stone received its first permit to operate on January 14, 1975.  At that time, it was designed to burn lignite fuel.

66.      Burning subbituminous coal as the primary fuel rather than lignite coal at Big Stone beginning in 1995 was a "change in the method of operation" at Big Stone, as that term was defined at 40 C.F.R. § 52.21(b)(2)(i) (1995), which constituted a "major modification" as that term is defined by § 111(a) of the Act and 40 C.F.R. § 52.21(b)(2).

67.      This major modification resulted in a "significant net emissions increase" of NOx and PM as defined by 40 C.F.R. 52.21(b)(3)(i) and (b)(23)(i)(1995).

–15–

68.     This major modification was performed without first obtaining a PSD permit, without performing the requisite air quality analysis, and without applying and complying with BACT.  And since approximately 1995, the Defendants have continued to operate Big Stone without a PSD permit, without performing the requisite air quality analysis, and without applying and complying with BACT as required by 40 C.F.R. § 52.21 (1995) in violation of the Act and the South Dakota SIP.

69.     Based on the foregoing, Defendants have violated and continue to violate § 165(a) of the Act, 42 U.S.C. § 7475(a), and 40 C.F.R. § 52.21 (1995), as incorporated into the South Dakota SIP at ARSD 74:36:09:02 (adopting by reference 40 C.F.R. § 52.21(j) (2005)). Unless restrained by an order of this Court, these and similar ongoing violations of the PSD requirements of the Act and the South Dakota SIP will continue at Big Stone.

70.     As provided in §§ 113 and 304 of the Act, 42 U.S.C. §§ 7413, 7604, the PSD violations set forth above subject Defendants to injunctive relief and civil penalties.

## SECOND CLAIM FOR RELIEF
### (Changes Involving Primary Superheater That Caused Significant Emissions Increase Without First Obtaining a PSD Permit)

71.     Paragraphs 1 through 63 are incorporated herein as if set forth in full.

72.     In approximately 1998, changes were made to the boiler at Big Stone that involved, among other things, adding surface area to the primary superheater.

73.     The changes made in approximately 1998 to the Big Stone boiler, including primarily the addition of more surface area to the primary superheater, were a "physical change" at Big Stone, as that term was defined at 40 C.F.R. § 52.21(b)(2)(i) (1995), which constituted a "major modification" as that term is defined by § 111(a) of the Act and 40 C.F.R. § 52.21(b)(2).

—16—

74.     This major modification resulted in a "significant net emissions increase" of SO2 and NOx as defined by 40 C.F.R. 52.21(b)(3)(i) and (b)(23)(i)(1995).

75.     This major modification was performed without first obtaining a PSD permit, without performing the requisite air quality analysis, and without applying and complying with BACT.  And since approximately 1998, the Defendants have continued to operate Big Stone without a PSD permit, without performing the requisite air quality analysis, and without applying and complying with BACT as required by 40 C.F.R. §52.21 (1995) in violation of the Act and the South Dakota SIP.

76.     Based on the foregoing, Defendants have violated and continue to violate § 165(a) of the Act, 42 U.S.C. § 7475(a), and 40 C.F.R. § 52.21 (1995), as incorporated into the South Dakota SIP at ARSD 74:36:09:02 (adopting by reference 40 C.F.R. § 52.21(j) (2005)). Unless restrained by an order of this Court, these and similar ongoing violations of the PSD requirements of the Act and the South Dakota SIP will continue at Big Stone.

77.     As provided in §§ 113 and 304 of the Act, 42 U.S.C. §§ 7413, 7604, the PSD violations set forth above subject Defendants to injunctive relief and civil penalties.

### THIRD CLAIM FOR RELIEF
**(Changes Involving Supply of Steam from Big Stone to Ethanol Plant Without First Obtaining a PSD Permit)**

78.     Paragraphs 1 through 63 are incorporated herein as if set forth in full.

79.     In approximately 2001, changes were made at the Big Stone plant to allow Big Stone to supply steam to a co-located ethanol plant, rather than only supplying steam to produce electricity for sale.

–17–

80.     These changes included the addition of a steam line between Big Stone and the ethanol plant, and the addition of a condensate return line, among other physical changes and changes in the method of operation of Big Stone.

81.     These changes made to Big Stone in approximately 2001 to the Big Stone boiler, were "physical changes or changes in methods of operation" at Big Stone, as those terms were defined at 40 C.F.R. § 52.21(b)(2)(i) (1995), which constituted a "major modification" as that term is defined by § 111(a) of the Act and 40 C.F.R. § 52.21(b)(2).

82.     This major modification resulted in a "significant net emissions increase" of SO2 and PM as defined by 40 C.F.R. 52.21(b)(3)(i) and (b)(23)(i)(1995).

83.     This major modification was performed without first obtaining a PSD permit, without performing the requisite air quality analysis, and without applying and complying with BACT.  And since approximately 2001, the Defendants have continued to operate Big Stone without a PSD permit, without performing the requisite air quality analysis, and without applying and complying with BACT as required by 40 C.F.R. §52.21 (1995) in violation of the Act and the South Dakota SIP.

84.     Based on the foregoing, Defendants have violated and continue to violate § 165(a) of the Act, 42 U.S.C. § 7475(a), and 40 C.F.R. § 52.21 (1995), as incorporated into the South Dakota SIP at ARSD 74:36:09:02 (adopting by reference 40 C.F.R. § 52.21(j) (2005)). Unless restrained by an order of this Court, these and similar ongoing violations of the PSD requirements of the Act and the South Dakota SIP will continue at Big Stone.

85.     As provided in §§ 113 and 304 of the Act, 42 U.S.C. §§ 7413, 7604, the PSD violations set forth above subject Defendants to injunctive relief and civil penalties.

–18–

## FOURTH CLAIM FOR RELIEF
### (BACT SIP Violations )

86.     Paragraphs 1 through 85 are incorporated herein as if set forth in full.

87.     As set forth above, Big Stone triggered the application of the CAA's PSD requirements first in approximately 1995 and on at least two other times since then, and on each day since 1995 has violated the PSD requirements as set forth above.

88.     Additionally, on each day since approximately 1995, when Big Stone first began operating without applying BACT and complying with BACT-derived emission limitations, the Defendants have violated the separate and independent requirement to apply and comply with BACT-derived emission limitations set forth first in the federal PSD rules, 40 C.F.R. § 52.21(j)(1995), and later in the South Dakota SIP (which became effective in 2007).  ARSD 74:36:09:02 (adopting by reference 40 C.F.R. § 52.21(j) (2005)); *see also* 72 Fed. Reg. 4671 (Feb. 1, 2007): 72 Fed. Reg. 72617 (Dec. 21, 2007).

89.     At present, Big Stone on each day that it operates and emits $SO_2$, $NO_x$ and PM, Big Stone continues to violate the federally enforceable South Dakota SIP BACT requirement set forth at ARSD 74:36:09:02 (adopting by reference 40 C.F.R. § 52.21(j) (2005)).

90.     Unless restrained by an order of this Court, these and similar ongoing violations of the PSD requirements of the Act and the South Dakota SIP will continue at Big Stone.

91.     As provided in §§ 113 and 304 of the Act, 42 U.S.C. §§ 7413, 7604, the PSD and South Dakota SIP violations set forth above subject Defendants to injunctive relief and civil penalties.

## FIFTH CLAIM FOR RELIEF
### (Failure to Obtain a PSD Permit Setting BACT Limits for CO2 and Methane)

92.     Paragraphs 1-91 are incorporated herein as if set forth in full.

93.     Carbon dioxide and methane are "air pollutants" pursuant to the longstanding definition in the Act found at 42 U.S.C. § 7602(g), and are subject to regulation under the Act, within the meaning of 40 C.F.R. § 52.21(b)(2)(i).

94.     Based on knowledge, information and belief, each of the major modifications described in Claims 1-3 above caused significant net increases in the emissions of $CO_2$ and methane at Big Stone, for which a PSD permit was required incorporating BACT limits for those air pollutants.

95.     Defendants' failure to obtain a PSD permit incorporating BACT limits for those air pollutants constitutes a violation of § 165(a) of the Act, 42 U.S.C.§ 7475(a) and 40 C.F.R. § 52.21 (1995), as incorporated into the South Dakota SIP.  Unless restrained by an order of this Court, these and similar ongoing violations of the PSD provisions of the Act will continue at Big Stone.

96.     As provided in §§ 113 and 304 of the Act, 42 U.S.C. §§ 7413, 7604, the PSD violations set forth above subject Defendants to injunctive relief and civil penalties.

### SIXTH CLAIM FOR RELIEF
**(Violations of the NSPS Resulting from the Modifications
to Allow Big Stone to Supply Steam to Ethanol Plant)**

97.     Paragraphs 1 through 63 are incorporated herein as if set forth in full.

98.     Plaintiff Sierra Club alleges that, after a reasonable opportunity for further investigation or discovery, it is likely that evidentiary support will be obtained to establish that some or all of the alleged physical changes made to accommodate the supply of steam to the

ethanol plant, including, but not limited to, the addition of a new steam line and condensate return line, were made within the Big Stone boiler island.

99.     Those alleged physical changes made to Big Stone to allow Big Stone to supply steam to the co-located ethanol plant in approximately 2001 constitute a "modification" as that term is defined by § 111 of the Act, 42 U.S.C. § 7411(a)(2), and the NSPS regulations, 40 C.F.R. §§ 60.2 and 60.14, because these changes resulted in an increase of Big Stone's maximum hourly emissions rate for SO2 and PM.

100.    As a consequence of these modifications, Big Stone became a "new source" within the meaning of the Act, 42 U.S.C. § 7411(a)(2), and an "affected facility" to which NSPS Subpart A and Da are applicable.  40 C.F.R. § 60.1 *et seq*.  Therefore, Big Stone is subject to the SO2 emission limitation set forth at 40 C.F.R. § 60.43a.

101.    Big Stone is subject to an SO2 limitation of 520 ng/J (1.20 lb/mmBtu) heat input and 10 percent of the potential combustion concentration (90 percent reduction) or 30 percent of the potential combustion concentration (70 percent reduction), when emissions are less than 260 ng/J (0.60 lb/mmBtu) heat input.  40 C.F.R. § 60.43a.

102.    On each day that Big Stone has operated and emitted SO2 since the ethanol plant modifications were completed in approximately 2001, the Defendants have violated the applicable NSPS Subpart Da SO2 emission limitation set forth at 40 C.F.R. § 60.43a.

103.    Unless restrained by an order of this Court, these and similar ongoing violations of the Act's NSPS requirements will continue at Big Stone.

104.    As provided in §§ 113 and 304 of the Act, 42 U.S.C. §§ 7413, 7604, the NSPS violations set forth above subject Defendants to injunctive relief and civil penalties.

## SEVENTH CLAIM FOR RELIEF
### (Declaratory Relief)

105.    Paragraphs 1 through 104 are incorporated herein as if set forth in full.

106.    Pursuant to 28 U.S.C. §§ 2201 and 2202, Sierra Club is entitled to a declaration that Defendants have violated the Act by commencing construction of one or more major modifications at Big Stone without a PSD permit, that Big Stone is a modified source for purposes of the Act's PSD program, and that Big Stone must meet applicable NSPS requirements, and such further necessary or proper relief as may be granted by the Court.

## PRAYER FOR RELIEF

WHEREFORE, based on the foregoing, the Sierra Club requests that this Court:

1.    Permanently enjoin the Defendants from operating Big Stone, including the construction of future modifications, except in accordance with the Clean Air Act, the South Dakota SIP, and any applicable regulatory requirements;

2.    Order the Defendants to apply for permits that are in conformity with the requirements of the PSD provisions of the Clean Air Act for each modification that Defendants commenced unlawfully at Big Stone without first obtaining a PSD permit;

3.    Order the Defendants to take all necessary measures to promptly comply with the SO2 emission limitation set forth in NSPS Subpart Da, 40 C.F.R. § 60.43a;

4.    Order the Defendants to remedy their past violations by, *inter alia*, requiring the Defendants to install, as appropriate, the necessary pollution controls to meet best available control technology emission limits;

5.      Order the Defendants to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the Clean Air Act alleged above;

6.      Order the Defendants to conduct audits of their operations to determine if any additional modifications have occurred that would require them to meet the requirements of the PSD and NSPS provisions of the Act, and to report the results of these audits to Sierra Club and the United States Environmental Protection Agency;

7.      Order the Defendants to pay civil penalties, including a beneficial mitigation project, pursuant to 42 U.S.C. § 7604(g)(2);

8.      Order the Defendants to pay the plaintiffs their costs of litigation, including but not limited to reasonable attorney and expert witness fees, as authorized in § 304 of the Act, 42 U.S.C. § 7604(d);

9.      Declare that Defendants were required to obtain PSD permits for changes to Big Stone;

10.     Declare that Defendants were required to meet certain NSPS Subpart Da requirements at Big Stone;

11.     Declare that Big Stone is a modified source for purposes of the Act's NSPS and PSD Programs; and

12.     Grant such other relief that the Court finds just and equitable.

Submitted this *10* day of June, 2008.

By _____

AARON J. EMERSON
Myers & Billion, LLP
300 N. Dakota Avenue, Suite 510
P. O. Box 1085
Sioux Falls, S.D. 57101-1085
Telephone:  (605) 336-3700
Facsimile:  (605) 336-3786
E-mail: aemerson@myersbillion.com

VANYA S. HOGEN
Jacobson, Buffalo, Magnuson, Anderson
& Hogen, P.C.
1360 Energy Park Drive, Suite 210
St. Paul, MN  55108
Telephone:  (651) 357-1491
Facsimile:  (651) 644-5904
E-mail:  vhogen@jacobsonbuffalo.com

GEORGE E. HAYS
(Pro Hac Vice Motion to be filed)
California State Bar No. 119904
Attorney at Law
236 West Portal Avenue, #110
San Francisco, CA 94127
Telephone: (415) 566-5414
E-mail: georgehays@mindspring.com

WILLIAM J. MOORE, III
(Pro Hac Vice Motion to be filed)
Florida Bar No. 0971812
The Law Office of
William J. Moore, III, P.A.
1648 Osceola Street
Jacksonville, Florida 32204
Telephone:  (904) 685-2172
Facsimile:   (904) 685-2175
E-mail: wmoore@wjmlaw.net

PLAINTIFF RESPECTFULLY DEMANDS A TRIAL BY JURY.

By _____

AARON J. EMERSON
Myers & Billion, LLP
300 N. Dakota Avenue, Suite 510
P. O. Box 1085
Sioux Falls, S.D. 57101-1085
Telephone:  (605) 336-3700
Facsimile:  (605) 336-3786
E-mail: aemerson@myersbillion.com

VANYA S. HOGEN
Jacobson, Buffalo, Magnuson, Anderson
& Hogen, P.C.
1360 Energy Park Drive, Suite 210
St. Paul, MN  55108
Telephone:  (651) 357-1491
Facsimile:  (651) 644-5904
E-mail:  vhogen@jacobsonbuffalo.com

GEORGE E. HAYS
(Pro Hac Vice Motion to be filed)
California State Bar No. 119904
Attorney at Law
236 West Portal Avenue, #110
San Francisco, CA 94127
Telephone: (415) 566-5414
E-mail: georgehays@mindspring.com

WILLIAM J. MOORE, III
(Pro Hac Vice Motion to be filed)
Florida Bar No. 0971812
The Law Office of
William J. Moore, III, P.A.
1648 Osceola Street
Jacksonville, Florida 32204
Telephone:  (904) 685-2172
Facsimile:   (904) 685-2175
E-mail: wmoore@wjmlaw.net