UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| SIERRA CLUB, | \* | CIV 08-1012 |
| Plaintiff, | \* | |
| -vs.- | \* | MEMORANDUM OPINION AND ORDER |
| OTTER TAIL CORPORATION, d.b.a. Otter Tail Power Company, MDU RESOURCES GROUP, INC., and NORTHWESTERN CORPORATION, d.b.a. NorthWestern Energy, | \* | |
| Defendants. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff filed a complaint for declaratory and injunctive relief, civil penalties, and costs and fees for alleged violations of the Prevention of Significant Deterioration ("PSD") provisions of the Clean Air Act ("CAA"), 42 U.S.C. §§ 7470-7492, the South Dakota State Implementation Plan (the "South Dakota SIP"), and the New Source Performance Standards ("NSPS") of the CAA, 42 U.S.C. § 7411, all such violations allegedly occurring at the Big Stone Generating Station near Big Stone, Grant County, South Dakota ("Big Stone"). Defendants filed a motion to dismiss on the basis that some claims were not asserted within the statute of limitations, are barred by the concurrent remedy doctrine, or are an impermissible collateral attack on a valid Clean Air Act permit issued by the State of South Dakota.

## CLEAN AIR ACT BACKGROUND

The United State Court of Appeals for the Eighth Circuit has set forth the background of the Clean Air Act:

> The Clean Air Act "establishes a partnership between EPA and the states for the attainment and maintenance of national air quality goals." Title I of the CAA allocates regulatory responsibilities between EPA and the respective states. For pollutants meeting certain criteria, EPA is responsible for promulgating national ambient air quality standards (NAAQS), pursuant to Section 109 of the Act . . . Under the CAA, states

must then adopt and develop state plans to ensure that state air quality meets the NAAQS. Thus, each state must submit a state implementation plan (SIP)[1] for each NAAQS promulgated by EPA.

Sierra Club v. E.P.A., 252 F.3d 943, 944-45 (8th Cir. 2001) (internal citations omitted).

In addition to promulgating NAAQS and requiring states to develop SIP's, the CAA directed the EPA to establish new source performance standards ("NSPS") for each source of pollution. 42 U.S.C. § 7411(b). New sources of pollution, including existing sources that undergo modifications resulting in a new source or increase in pollution, are prohibited from operating in violation of the performance standards. 42 U.S.C. § 7411(e). New (or modified) sources are required to undergo a new source review permitting process and to conform to technology-based performance standards.

The pollutants regulated and at issue here include sulfur oxides ("$SO_2$"), carbon monoxide ("CO"), particulate matter ("PM"), and nitrogen oxides ("$NO_x$")[2]. 40 C.F.R. §§ 50.1 et seq. South Dakota's SIP is administered by the Department of Environment and Natural Resources ("DENR")[3]. SDCL 34A-1-5, SDCL 1-40-22, 59 Fed. Reg. 47,260 (September 16, 1994).

The CAA regulates both new and significant modifications to existing major stationary sources of air pollution. As applicable in this case, the CAA requires that when a new source of pollution is built or an existing source undergoes a "major modification," the source (in this case, Big Stone) must obtain a PSD permit. 42 U.S.C. § 7475(a), 40 C.F.R. §§ 52.21(a)(2)(iii) 52.21.2178, ARSD § 74:36:09:01.01. As part of the permitting process, the facility must demonstrate that the proposed modification is subject to the best available control technology ("BACT") for each regulated pollutant emitted from the facility. 42 U.S.C. § 7475(a)(4), 40

---

[1] See 40 C.F.R. § 52.2186 for a history of South Dakota's SIP. See also 63 FR 55804-01

[2] The EPA established rules for only one nitrogen oxide ("$NO_x$") compound, i.e. nitrogen dioxide ("$NO_2$"). Environmental Defense v. E.P.A., 489 F.3d 1320, 1324 (D.C. Cir. 2007).

[3] The Department of Natural Resource Development, formerly known as the Department of Water and Natural Resources, was renamed the Department of Environment and Natural Resources in 1991. SDCL 1-40-01.

C.F.R. § 52.21(j)(3), ARSD § 74:36:09:02 (incorporating by reference the provisions of 40 C.F.R. § 52.21).

The CAA provides separate permitting programs for pre-construction permits (42 U.S.C. § 7475) and operating permits (42 U.S.C. § 7661a). Section 7475 provides, in part, that:

> No major emitting facility on which construction is commenced after August 7, 1977, may be constructed in any area to which this part applies unless--
>
> (1) **a permit has been issued** for such proposed facility . . . setting forth emission limitations for such facility . . .
>
> (2) the proposed permit has been subject to a review . . . the required analysis has been conducted . . . and a public hearing has been held with opportunity for interested persons . . . to appear and submit written or oral presentations on the air quality impact of such source, alternatives thereto, control technology requirements, and other appropriate considerations;
>
> (3) the owner or operator of such facility demonstrates . . . that emissions from construction or operation of such facility will not cause, or contribute to, air pollution in excess of any (A) maximum allowable increase . . . (B) national ambient air quality standard in any air quality control region, or (C) any other applicable emission standard . . .
>
> (4) **the proposed facility is subject to the best available control technology** for each pollutant . . . emitted from, or which results from, such facility . . .
>
> (6) there has been an analysis of any air quality impacts projected for the area as a result of growth associated with such facility;
>
> (7) the person who owns or operates . . . a major emitting facility for which a permit is required . . . agrees to conduct such monitoring as may be necessary . . . (emphasis supplied)

Title V of the CAA, 42 U.S.C. § 7661a, provides, in part,

> it shall be unlawful for any person to violate any . . . permit issued under this subchapter, or to operate [a source of pollution] . . . except in compliance with a permit issued by a permitting authority under this subchapter. (Nothing in this subsection shall be construed to alter the applicable requirements of this chapter that a permit be obtained before construction or modification.)

Plaintiff did not contend in its complaint that defendants had not obtained a Title V operating permit or that it was not in compliance with a Title V operating permit.

At all times relevant here, South Dakota either did not have an approved SIP or the approved SIP merely incorporated the federal regulations by reference. Thus, in South Dakota, there are separate construction and operating permit programs. In some states, the SIP integrates the construction and operating permit programs.

The citizen suit provision of the CAA provides, in part, that:

> [Unless a person fails to give notice as required by § 7604(b)] any person may commence a civil action on his own behalf--
>
> **(1) against any person ... who is alleged to have violated** (if there is evidence that the alleged violation has been repeated) **or to be in violation of (A) an emission standard or limitation** under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation,
>
> (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator, or
>
> **(3) against any person who proposes to construct or constructs any new or modified major emitting facility without a permit** required under part C of subchapter I of this chapter (relating to significant deterioration of air quality) or part D of subchapter I of this chapter (relating to nonattainment) **or who is alleged to have violated** (if there is evidence that the alleged violation has been repeated) **or to be in violation of any condition of such permit**.

42 U.S.C. § 7604(a) (emphasis supplied). Section 7604(a)(1) of the citizen suit provision authorizes suit to enforce compliance with Title V permits issued under §§ 7661 - 7661f (operation permits). *See* 42 U.S.C. § 7604(f) ("the term 'emission standard or limitation under the chapter' means . . . any requirement to obtain a permit as a condition of operations.") Section 7604(a)(3) authorizes, *inter alia*, a suit to enforce Title C permitting requirements under § 7475 (preconstruction permits).

4

# FACTUAL BACKGROUND

Otter Tail Corporation ("Otter Tail"), MDU Resources Group, Inc. ("MDU"), and NorthWestern Corporation (NorthWestern") are the owners of Big Stone, an electric generating facility operated by Otter Tail. Big Stone's first operating permit was issued on January 14, 1975, and it began commercial operation on May 1, 1975, burning lignite coal as its primary fuel. In August 1995, Big Stone began burning subbituminous coal as its primary fuel. Plaintiff contends that this conversion resulted in a significant net emissions increase in $NO_x$ and PM emissions. Plaintiff alleges that defendants did not obtain a PSD permit before initiating the burning of subbituminous coal, did not install BACT, and did not comply with BACT-based emission limitations.

Plaintiff contends that, in 1998, changes were made to the boiler at Big Stone that added surface area to the primary superheater. Plaintiff contends that such changes resulted in a significant net emissions increase in $SO_2$ and $NO_x$ emissions. Plaintiff alleges that defendants did not obtain a PSD permit before making such changes, did not install BACT, and did not comply with BACT-based emission limitations.

In 2001, Big Stone again made changes to its boiler, this time to allow the plant to supply steam to a co-located ethanol plant, rather than only supplying steam to produce electricity for sale. Plaintiff contends that such changes resulted in a significant net emissions increase in $SO_2$ and PM emissions. On August 8, 2001, DENR issued a minor permit amendment to the Big Stone Title V permit to allow the provision of steam to the ethanol plant by increasing the permitted heat input capacity of the boiler. Plaintiff contends that the defendants did not obtain a PSD permit *prior* to making the changes to the Big Stone boiler and defendants did not install and comply with BACT-based emissions requirements.

# DECISION

## I. Limitations

Defendants contend that plaintiff's claims as to the 1995 conversion from burning lignite coal to burning subbituminous coal, the 1998 changes to the Big Stone boiler, and the 2001 changes to supply steam to the ethanol plant are barred because they were not timely asserted. A limitations defense may be asserted through a motion to dismiss pursuant to Fed. R. Civ. P.

5

12(b)(6) when it appears from the face of the complaint that the limitation period has run. Varner v. Peterson Farms, 371 F.3d 1011, 1016 (8th Cir. 2004).

The parties agree that the Clean Air Act does not specify a limitations period for a citizens suit and, therefore, the applicable limitations provisions set forth in 28 U.S.C. § 2642 apply. That provision provides:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

28 U.S.C. § 2462. This action was not commenced within five years of the alleged failure to obtain permits prior to changes made to the Big Stone plant in 1995, 1998, and 2001.

Plaintiff claims that defendants' failure to obtain a PSD permit or to utilize the BACT results in Big Stone's ongoing violations of the CAA. To put it otherwise, plaintiff claims that there have been a series of discrete violations on a daily basis. Putting semantics aside, I believe this still comes within a claim of continuing violations, thus escaping the statute of limitations. Defendants contend that any alleged failure to obtain a PSD permit or use BACT is a violation of the CAA that accrues only once - on the day construction commences without the required permit or technology.

The issue is certainly not one of first impression, although it has not been specifically decided in the Eighth Circuit. The United States Court of Appeals for the Eleventh Circuit has held that "a violation of the Clean Air Act's preconstruction permit requirements . . . occurs at the time of the construction or modification and is not continuing in nature." National Parks and Conservation Ass'n, Inc. v. Tennessee Valley Authority, 502 F.2d 1316, 1324 (11th Cir. 2007) (*quoting* United States v. Ill. Power Co., 245 F.Supp.2d 951, 957 (S.D. Ill. 2003)). The Eleventh Circuit followed a line of district court cases holding that violations of the preconstruction permitting process do not constitute continuing violations of the CAA: New York v. Niagara Mohawk Power Corp., 263 F.Supp.2d 650, 661 (W.D.N.Y.2003) ("A given construction or modification project occurs only once."); United States v. Ill. Power Co., 245 F.Supp.2d 951, 957-58 (S.D.Ill.2003); United States v. Murphy Oil USA, Inc., 143 F.Supp.2d 1054, 1083-84

(W.D.Wis.2001); and United States v. Westvaco Corp., 144 F.Supp.2d 439, 443-44 (D.Md.2001) (collecting additional cases).

> Westvaco explained that
>
>> 42 U.S.C. § 7475(a), the Act's PSD Program, specifically indicates that violations of that provision occur at the time construction is commenced, and not at some later point in time.
>>
>> Section 7475(a), entitled "Preconstruction requirements," states that "[n]o major emitting facility on which construction is commenced after August 7, 1977, may be constructed in any area to which this part applies unless [a permit meeting certain criteria has been issued]." 42 U.S.C. § 7475(a) (emphasis added). Section 7475(a), therefore, clearly and unambiguously applies to the construction-not the operation-of major stationary sources. This interpretation is further supported by 42 U.S.C. § 7477, the PSD Program's enforcement provision, which mandates the EPA to "take such measures, including issuance of an order, or seeking injunctive relief, as necessary to prevent construction or modification of a major emitting facility which does not conform to the requirements of [the PSD Program]." Id. § 7477 (emphasis added).

United States v. Westvaco, 144 F.Supp.2d at 444-45.

The United States Court of Appeals for the Sixth Circuit held in National Parks Conservation Ass'n, Inc. v. Tennessee Valley Authority, 480 F.3d 410, 419 (6th Cir. 2007), that failure to apply BACT is a cause of action that "manifests itself anew each day a plant operates without BACT limits on emission." The Sixth Circuit relied upon language in one of the PSD regulations that states:

> "A major modification *shall apply* best available control technology for any pollutant for which it would result in a significant net emissions increase at the source." Tenn. Comp. R. & Regs. § 1200-3-0-.01(4)(j)(3) (emphasis added). This provision, by its own terms creates an ongoing obligation to apply BACT, regardless of what terms a preconstruction permit may or may not contain.

National Parks v. TVA, 498 F.Supp.2d at 418-19.

In a case decided prior to the Sixth Circuit's National Parks case, the district court in United States v. Duke Energy Corporation, 278 F.Supp.2d 619, 650 (M.D.N.C. 2003), rejected Westvaco, Murphy Oil, and similar cases based upon the language in the PSD statutes that

7

"facilities contemplating undergoing a modification must obtain a PSD permit prior to construction and, following construction, operate in accordance with the terms of that permit."

> The permitting process involves not only preconstruction review but also the determination of BACT, i.e., the setting of emission limitations, and absent the proper implementation of BACT a source operator may be enjoined from operating.
>
> * * *
>
> [B]ecause the PSD permitting provisions provide both preconstruction obligations and subsequent obligations on operations, Duke Energy's alleged violation of failing to undergo the PSD permitting process does not terminate upon the completion of construction activity. The violation continues because each day that Duke Energy operates an allegedly modified plant and emits pollutants into the atmosphere, it may be in violation of the requirement to comply with the operation conditions, i.e., the emission limitations, that would have been contained within a PSD permit had Duke Energy submitted to the permitting process.

United States v. Duke Energy, 278 F.Supp.2d at 651. Duke Energy relied upon the conclusion that "Title V does not establish additional substantive requirements, but merely brings together applicable requirements, such as the PSD provisions, into one permitting scheme." *Id.* at 651-52. It should be noted, however, that the court in Duke Energy specifically acknowledged that the contrary majority view (described above) has no application in a case such as Duke Energy where the SIP contains an integrated construction and operation permit. *Id.* at 652.

The Eastern District of Kentucky relied upon similar statutory language in determining that "each day [the defendant] does not obtain a construction permit is arguably a violation of the regulation that an owner cannot *operate* a modification that is not in accordance with a submitted application for or approved construction permit." United States v. East Kentucky Power Co-op., Inc., 498 F.Supp.2d 970, 975 (E.D. KY 2007) (emphasis in original). The Eastern District of Kentucky noted that, like Duke Energy, Kentucky's SIP has nearly identical integrated scheme language. *Id.* at n.7.

The Eleventh Circuit rejected the Sixth Circuit rationale and the line of district court cases set forth above because, in the Eleventh Circuit's case, the obligation to apply BACT "was solely a prerequisite for the approval of the modification, not a condition of . . . lawful operation under [the relevant SIP]." 502 F.3d at 1324.

> we conclude that an important difference in the states' plans ultimately precludes us from reaching the same result as our sister circuit. Tennessee's State Implementation Plan provided that, if a party failed to obtain a construction permit specifying emission limitations at the time of construction or modification, a construction permit could be issued at a later date "to assure that these regulatory requirements are met." Tenn. Comp. R. & Regs. § 1200-3-9-.01(1)(e). The Sixth Circuit construed this provision as creating an ongoing obligation to comply with requirements of the preconstruction permitting process. *National Parks*, 480 F.3d at 413. National Parks and the Sierra Club have not pointed out any analogous provision in the Alabama Plan in effect in 1982, and we are not aware of one.

National Parks Conservation Ass'n, Inc. v. Tennessee Valley Authority, 480 F.3d at 419.

Defendants here rely upon the fact that the obligation to employ BACT is in conjunction with obtaining a PSD permit. Defendants contend that there is not a separate obligation under the CAA to continue to upgrade and employ technological advances as a prerequisite to continued operation.

This case is more analogous to the Eleventh Circuit's decision. South Dakota does not have an integrated permitting system - it incorporates by reference the federal statutory scheme under which Title V operating permits did not even exist until 1990, nearly 20 years after the CAA's PSD permit rules were enacted.

I adopt the reasoning of the Eleventh Circuit primarily based upon the United States Court of Appeals for the Eighth Circuit's recent decision in Izaak Walton League of America, Inc. v. Kimbell, ___ F.3d ___, 2009 WL 564976 (8th Cir. March 6, 2009). That case concerned alleged violations of the Boundary Waters Canoe Area Wilderness Act. The Eighth Circuit rejected a continuing violation theory to extend the federal statute of limitations found at 28 U.S.C. § 2401(a). The language of that statute is similar to the language in § 2462 - the action must be commenced within the applicable period of "when the claim first accrued."

The plaintiff's enforcement claims here first accrued in 1995, 1998, and 2001, over five years prior to instituting this action.

Of course, the purpose of the CAA is to reduce pollution. Would it be contrary to the purposes of the CAA to allow Big Stone to escape from a PSD enforcement action because it allegedly managed to make a major modification which did not come to the attention of the

9

government or the public prior to the running of the statute of limitations? Concerns that Big Stone is "operating a facility after it was modified without first obtaining the necessary construction permit may constitute a continuing violation of the relevant operating permit, but it does not constitute a continuing violation of the relevant construction permit. Continuing violations are more appropriately enforced through the operating permit requirements. New York v. Niagara Mohawk, 263 F.Supp.2d at 662 (internal citation to unpublished case omitted).

Language from Westvaco is instructive:

> But even if the underlying intent behind the [CAA PSD] regulation is to assure continuing air quality, the regulation cannot reasonably be construed to mean that building or altering a machine without a permit is a violation that continues as long as the machine still exists or is operated . . . [There is] a significant distinction between a failure to obtain preconstruction permits and plan approvals and failure to obtain *operating* permits. The latter violation would be continuing since every day of operation without an operating permit is another violation. In contract, a violation for failure to obtain a construction permit does not continue once the unpermitted construction is completed.

United States v. Westvaco, 144 F.Supp.2d at 443-44 (*citing* unpublished district court cases).

The D.C. Circuit addressed similar enforcement concerns in a case under the Toxic Substances Act:

> We are interpreting a statute, not creating some federal common law. The provision before us, § 2462, is a general statute of limitations, applicable not just to EPA in TSCA cases, but to the entire federal government in all civil penalty cases, unless Congress specifically provides otherwise. We therefore cannot agree with EPA that our interpretation of § 2462 ought to be influenced by EPA's particular difficulties in enforcing TSCA. And we cannot understand why Congress would have wanted the running of § 2462's limitations period to depend on such considerations. An agency may experience problems in detecting statutory violations because its enforcement effort is not sufficiently funded; or because the agency has not devoted an adequate number of trained personnel to the task; or because the agency's enforcement program is ill-designed or inefficient; or because the nature of the statute makes it difficult to uncover violations; or because of some combination of these factors and others . . . An agency's failure to detect violations, for whatever reasons, does not avoid the problems of faded memories, lost witnesses and discarded documents in penalty actions brought decades after alleged violations are finally discovered. Most important, nothing in the language of § 2462 even

10

arguably makes the running of the limitations period turn on the degree of difficulty an agency experiences in detecting violations.

3M Co. v. Browner, 17 F.3d 1453, 1461 (D.C. Cir. 1994).

It is not the province of the district court to concern itself with any arguable unfairness in the application of a statute of limitations under certain circumstances. A statute of limitations defense is not a "disfavored" defense. Further, the strict application of the five year limitations period is not unjust here because defendants' alleged CAA violations could at least arguably be addressed in a citizen suit Title V claim or in an equitable enforcement claim by the EPA.

**II. Concurrent Remedy Doctrine.**

Defendants also contend that plaintiff's claims for injunctive and declaratory relief should be dismissed under the concurrent remedy doctrine. The United States Supreme Court held in Cope v. Anderson, 331 U.S. 461, 464, 67 S.Ct. 1340, 1341, 91 L.Ed. 1602 (1947), that equitable relief is not available "where the applicable statute of limitations would bar the concurrent legal remedy." The Eleventh Circuit explained this doctrine in National Parks and Conservation Ass'n, Inc. v. Tennessee Valley Authority:

> By its plain language, the statute of limitations set forth in 28 U.S.C. § 2462 applies only to claims for legal relief; it does not apply to equitable remedies. Nonetheless, where a party's legal remedies are time-barred, that party's concurrent equitable claims generally are barred under the concurrent remedy doctrine.
>
> National Parks and the Sierra Club rely on *Banks* and *United States v. Cinergy Corp.*, 397 F.Supp.2d 1025, 1032 (S.D.Ind.2005), in arguing that the concurrent remedy doctrine does not bar their claims. *Banks* carved out an exception to the concurrent remedy doctrine so that statutes of limitations cannot operate to bar "claims brought by the federal government in its sovereign capacity" as enforcer of environmental regulations. National Parks and the Sierra Club argue that this exception should be extended to them because they are acting as "private attorneys general" to enforce environmental regulations for the public benefit. There is no authority, however, for expanding the governmental exception to preclude application of the concurrent remedy doctrine in the instant suit, which was filed by private parties where the government has declined to act. The statute provides that plaintiffs in a citizen suit are acting "on [their] own behalf," 42 U.S.C. § 7604(a); though they may be acting as

11

private attorneys general, they do not represent the public at large in the same way the government does when it brings suit to enforce the statute.

National Parks and Conservation Ass'n, Inc. v. Tennessee Valley Authority, 502 F.3d at 1326-27 (internal citations omitted).

Plaintiff contends that the Eleventh Circuit "invented" a limit on CAA citizen suit remedies. It is true that the federal statute of limitations set forth in 28 U.S.C. § 2462, by its own terms, bars only an "action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture," all legal remedies. Federal Election Commission v. The Christian Coalition, 965 F.Supp. 66, 71 (D.C. 1991). "The Supreme Court also instructs us that 'statutes of limitation are not controlling measures of equitable relief.'" *Id.* (*quoting* Holmberg v. Armbrecht, 327 U.S. 392, 396, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1943) (interpreting the availability of a remedy under the Federal Farm Loan Act and whether to adopt a state law statute of limitations in the absence of an applicable federal limitation). The Supreme Court's decision in Holmberg did not address the concurrent remedy rule because that case concerned "a federal right for which the sole remedy is in equity." Holmberg v. Armbrecht, 327 U.S. at 395, 66 S.Ct. at 584.

Plaintiff relies upon the rule that enforcement actions seeking injunctive relief brought by the government are not barred by the concurrent remedy rule. *See* United States v. Banks, 115 F.3d 916, 919 (11th Cir. 1997). The Tenth Circuit held, in a Clean Water Act case, that "[we interpret § 2462 narrowly because 'an action on behalf of the United States in its governmental capacity . . . is subject to no time limitation, in the absence of congressional enactment clearly imposing it.'" United States v. Telluride Co., 146 F.3d 1241, 1243 (10th Cir. 1998) (*quoting* E.I. Dupont De Nemours & Co. v. Davis, 264 U.S. 456, 462, 44 S.Ct. 364, 68 L.Ed. 788 (1924)).

DuPont, Telluride, and Christian Coalitions, *supra*, all concerned enforcement actions brought by a federal agency. This case was initiated under the citizen suit provision of the CAA. Plaintiff contends that citizens who file citizen enforcement actions act as a "private attorney general" and stand in the shoes of the government which is not subject to a statute of limitations as to equitable remedies.

> Citizen enforcement actions greatly resemble government enforcement and qui tam actions. A citizen plaintiff, when bringing an enforcement action, supplements the enforcement power of the EPA . . . Although citizen

plaintiffs may seek civil penalties only in the context of suits brought to enjoin or otherwise abate ongoing violations, in those suits citizen plaintiffs effectively stand in the shoes of the EPA. The citizen plaintiff's role is to assert permit violations and to request that a fine be imposed; the citizen plaintiff does not personally benefit from bringing the action.

Sierra Club v. Chevron U.S.A., Inc., 834 F.2d 1517, 1522 (9th Cir. 1987).

I reject the contention that the federal government's special exemption from statutes of limitation for equitable actions inures to the benefit of private parties. Citizens bringing suits under the CAA do not represent the public at large in the same way that the government does when it brings suit. National Parks and Conservation Ass'n, Inc. v. Tennessee Valley Authority, 502 F.3d at 1327; 42 U.S.C. § 7604(a) ("any person may commence a civil action *on his own behalf*"). Despite the fact that any monetary penalty recovered in a citizen suit is paid to the United States Treasury, 42 U.S.C. § 7604(g), plaintiff cites no compelling authority that citizens may stand in the shoes of the EPA and be insulated from limitations periods in the same manner.

### III. Collateral Attack.

Defendants contend that the PSD and NSPS claims involving the 2001 changes (to enable Big Stone to supply steam to the ethanol plant) must also be dismissed because they constitute a collateral attack on the permit issued by DENR in 2001 for that project. (The PSD claims are untimely). Defendants did obtain an amendment to their Title V permit for that project. During the permitting process, DENR made a determination that the changes would not trigger the NSPS provisions of the CAA because the changes were not a "modification."

Pursuant to 42 U.S.C. § 7661a(a), it is unlawful to either violate a permit or to operate without a valid permit. Plaintiff contends that defendants cannot rely upon the 2001 permit as a defense to plaintiff's allegations that defendants failed to comply with NSPS standards because Congress specifically limited the so-called "permit shield" defense in 42 U.S.C. 7661c(f) (as to Title V permits):

> Permit shield.
>
> Compliance with a permit issued in accordance with this subchapter shall be deemed compliance with section 7661a of this title. Except as otherwise provided by the Administrator by rule, the permit may also provide that compliance with the permit shall be deemed compliance with other applicable provisions of this chapter that relate to the permittee if—

13

> (1) the permit includes the applicable requirements of such provisions, or
> (2) the permitting authority in acting on the permit application makes a determination relating to the permittee that such other provisions (which shall be referred to in such determination) are not applicable and the permit includes the determination or a concise summary thereof.
>
> Nothing in the preceding sentence shall alter or affect the provisions of section 7603 of this title, including the authority of the Administrator under that section.

"A part 70 permit that does not expressly state that a permit shield exists shall be presumed not to provide such a shield." 40 C.F.R. § 70.6(f)(2). The permit shield results in a conclusion that, as a matter of law, "compliance with the permit is 'deemed compliance with other applicable provisions' of the CAA." Sierra Club v. E.P.A., 551 F.3d 1019, 1022 (D.C. Cir. 2008).

Plaintiff contends, and defendants agree, that the Title V permit at issue here contains no permit shield. Absent such language, compliance with the Title V permit issued to Big Stone in 2001 does not, as a matter of law, compel a conclusion that DENR determined that Big Stone was in compliance with the NSPS requirements (or was not required to comply). Defendants cannot, due to the absence of a permit shield, rely upon the permit as an affirmative defense.

The absence of a permit shield does give plaintiff a free pass to challenge the permit in a § 7604 citizen enforcement action. The absence of a permit shield provision in the 2001 permit merely prohibits the automatic permit shield defense. Defendants assert a collateral challenge defense separate from the statutory permit shield defense.

Defendants applied for and received an amended Title V operating permit in 2001. That permit did not require defendants to comply with the NSPS provisions of the CAA. A Title V permit is a compilation in a single document of existing applicable emission limits. 42 U.S.C. § 7661c(a). Plaintiff does not contend that defendants are not in compliance with the terms of that operating permit. Instead, plaintiff contends that defendants are not in compliance with NSPS emissions provisions (which provisions DENR did not include in the permit). The citizen suit provisions of the CAA do not authorize such a claim. Citizen suits are limited to claims that sources of pollution either failed to obtain a permit or are violating a permit. 42 U.S.C. § 7604(a).

14

Title V sets forth its own provisions to challenge the provisions of a Title V permit. Plaintiff complains that defendants were not required to comply and did not comply with NSPS emissions limitations. If defendants' Title V permit application did not comply with a requirement of the CAA, the EPA was required to object to the issuance of the permit. 42 U.S.C. § 7661d(b)(1). If the EPA does not object, and it did not do so in this case, any person may petition the EPA to object to the permit application. 42 U.S.C. § 7661d(b)(2). If the EPA denies the petition asking the EPA to object, such denial is subject to the judicial review provisions of 42 U.S.C. § 7607. *Id.* Pursuant to § 7607(b)(1), a petition for review of the EPA's denial of a petition to object must be filed in the United States Court of Appeals for the circuit in which the action arose. The CAA specifically provides that private parties may not seek judicial review in a civil enforcement proceeding of an action of the EPA if such action could have been reviewed pursuant to § 7607(b)(1):

> Action of the Administrator [EPA] with respect to which review should have been obtained under paragraph (1) shall not be subject to judicial review in civil or criminal proceedings for enforcement.

42 U.S.C. § 7607(b)(2).

Plaintiff's challenge to defendants' failure to comply with NSPS emissions limitations should have been made pursuant to § 7661d Title V permit provisions and the § 7607 judicial review provisions of the CAA. This Court does not have jurisdiction over that claim under the citizen suit provisions of the CAA.

**ORDER**

Based upon the foregoing

IT IS ORDERED:

1. The motion, Doc. 22, to dismiss should be and is granted.

Dated this 31st day of March, 2009.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY:_____
　　　　　DEPUTY
　　(SEAL)

15